NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1164

CARRIE DEANGELO

vs.

TOWN OF TRURO & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff appeals from a summary judgment dismissing her complaint for employment discrimination based on gender and sexual orientation, and seeking a declaratory judgment.  We conclude that genuine issues of material fact preclude summary judgment on the question of the timeliness of the complaint against the defendants town of Truro and Kyle Takakjian, as well as on the question whether the so-called "Souza report" was properly considered a part of the plaintiff's personnel file, and we vacate so much of the judgment that dismissed count one against the town and counts two and three against the town and Takakjian.  We affirm the judgment insofar as it dismissed the plaintiff's claims against the defendant Craig Bayer.

---

[1] Kyle Takakjian and Craig Bayer.

To bring a claim of discrimination under G. L. c. 151B, § 5, in the Superior Court, the claim must first be filed with the Massachusetts Commission Against Discrimination (MCAD) within three hundred days of the alleged discriminatory conduct. Where, as in the present case, the complaint alleges a continuing violation, see Cuddyer v. Stop & Shop Supermkt. Co., 434 Mass. 521, 541 (2001), a claim may encompass related acts of discrimination extending beyond the three hundred-day limitation period, so long as (1) at least one unlawful act occurred within the limitation period, (2) the timely act has a substantial relationship to the earlier acts, and (3) the earlier violations did not trigger the plaintiff's awareness and duty to assert her rights in a timely fashion. See Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination, 441 Mass. 632, 643 (2004).

The plaintiff filed her complaint with MCAD on May 24, 2017; accordingly, any violations before July 28, 2016, would be outside the statute of limitations. On appeal, the plaintiff points to three "anchoring" violations: (1) a vote in September 2016 denying her union representation; (2) termination of her employment on October 31, 2016, which she claims to have been the result of a constructive discharge, and (3) the refusal by the town to provide to her a copy of the Souza report to which, she claims, she was entitled pursuant to G. L. c. 149, § 52C.

2

"We review a motion for summary judgment de novo.  In doing so, we must determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law'" (citations omitted).  <u>Psychemedics Corp</u>. v. <u>Boston</u>, 486 Mass. 724, 731 (2021).

We agree with the motion judge that the record includes no evidence to support the plaintiff's contention that the union vote to deny her representation was the product of unlawful discrimination.  Nor can the termination of her employment serve as an anchoring act of discrimination, even if her claim of constructive discharge is accepted as valid.  The discriminatory acts she claims to have led to her constructive discharge all occurred prior to July 28, 2016; it is of no moment that following those discriminatory acts she delayed departure from her position until October.[2]

---

[2] We note that, though the plaintiff asserts in her brief that discriminatory acts by her subordinates continued beyond July 2016, and "never ceased" prior to her October 2016 constructive discharge, she provides no record citations to support the assertion.  See Mass. R. A. P. 16 (a) (7) and (9) (A), as appearing in 481 Mass. 1628 (2019).  We note as well, however, that the town's emphasis on the plaintiff's statement in her deposition that she couldn't "think of" any complaints or concerns after March 2016 is misleading; it ignores her testimony that acts of insubordination were "almost like daily" and testimony of Sergeant David Perry that the officers "wouldn't take orders from her; they would talk behind her back; they would disrespect her out on the field," and that "they used to have meetings in the back room to discuss things that she

The question of the Souza report stands differently. Viewing the facts in the light most favorable to the plaintiff, the record reveals that, in April 2016, the town engaged retired chief of police John Souza to review the facts that gave rise to certain discipline administered to the plaintiff, and to "retrain" her for two days. Souza conducted a thorough review of the facts underlying the discipline, and concluded that the plaintiff had done nothing wrong.[3] Souza also concluded that the town had mishandled the investigation into the plaintiff's conduct, that its assessment of the propriety of her actions was inaccurate, and that the town and Takakjian encouraged insubordination and disrespect of the plaintiff by her subordinates. When the plaintiff became aware of the report (and in a general sense of its content), she requested a copy of it in June 2016, followed by a public records request on July 12, 2016. On July 28, 2016, counsel for the town refused in writing to produce the report, on the ground that it was exempt from production under three exemptions to the definition of

---

wasn't doing correctly." In proceedings following remand, the plaintiff is, of course, free to present specific evidence of discriminatory acts during the period following July 2016.

[3] Though Souza found that the plaintiff's failure to issue a citation at the scene of a traffic stop involved in one of the incidents was a procedural error, the plaintiff was not required by law to issue a citation at the scene and the charges against the defendants in that case would have survived any legal challenge.

"public records":  for materials that may "constitute an unwarranted invasion of personal privacy"; for inter or intra-agency materials relating to public policy decisions before the agency; and for investigatory materials "the disclosure of which . . . would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest."  G. L. c. 4, § 7, twenty-sixth (c), (d), (f).  On the plaintiff's appeal of the town's denial of her public records request, the supervisor of records in the public records division of the Office of the Secretary of the Commonwealth concluded that the town was not required, under the public records law, to release the Souza report, by virtue of exemption (f), applicable to investigatory materials.  However, the supervisor of records also observed that the plaintiff was entitled to inspect her own personnel records pursuant to G. L. c. 149, § 52C.  After the plaintiff made further efforts to obtain and review the Souza report, the town on March 27, 2017, again refused her request, despite having been ordered by the Office of the Attorney General to produce it, on the ground that the report was not a personnel record because, by virtue of her separation from employment, it could not be used for any of the actions contemplated by the statute.

The motion judge in the present case did not address the plaintiff's request for a declaration that the Souza report was

5

a part of her personnel record, and that she was accordingly entitled to review it on request. The town asserts that the Souza report was not a part of the plaintiff's personnel record. That assertion is, described most charitably, not free from doubt; both the supervisor of records in the Office of the Secretary of the Commonwealth and the Office of the Attorney General essentially expressed in writing their view that it is. In any event, the material fact is at a minimum subject to genuine dispute, warranting further proceedings in the Superior Court, and a determination of the question by a judge of that court as requested in the plaintiff's complaint. Viewed in context, and in the light most favorable to the plaintiff, the Souza report was integrally related to the pattern of discrimination alleged by the plaintiff during the period prior to July 2016, and in particular to her discipline by the town and Takakjian in a manner that was not applied to her male colleagues and subordinates. The town's refusal to provide it to her accordingly also could serve as an anchoring act of discrimination within the limitation period.[4]

_____

[4] The town separately argues that the plaintiff waived her discrimination claims in a memorandum of agreement she signed on February 21, 2016. The motion judge did not address the town's waiver argument in his memorandum of decision. Though we may affirm the judgment on any ground supported by the record, we decline the town's request that we affirm the judgment of dismissal on that basis. As the town acknowledges, the waiver of a claim must be knowing and voluntary. The plaintiff asserts

6

So much of the judgment that dismissed count one against the town and counts two and three against the town and Takakjian is vacated, and the matter is remanded to the Superior Court for further proceedings consistent with this memorandum and order. The judgment is affirmed insofar as it dismissed the plaintiff's claims against Bayer.

<u>So ordered</u>.

By the Court (Green, C.J.,
  Blake & Henry, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  December 7, 2023.

---

that she was coerced into signing the release under threat of disciplinary actions against her.  In any event, whether a waiver of claims is knowing and voluntary must be evaluated on the basis of the totality of the circumstances, and the burden is on the releasee to establish that the waiver was knowing and voluntary.  <u>Melanson</u> v. <u>Browning-Ferris Indus., Inc.</u>, 281 F.3d 272, 274 (1st Cir. 2002).  Even if the question is susceptible of determination on the present record, without confronting disputed questions of fact, we believe it better to be considered by the Superior Court in the first instance.  We also note that, though the plaintiff, the town, and the plaintiff's union were parties to the agreement, Takakjian was not a party, and the release provision does not identify the releasees. Moreover, the agreement was signed on February 21, 2016, prior to the town's refusal to provide the Souza report to the plaintiff and, though not raised by the plaintiff in her brief on appeal, we also note that there may be questions concerning the scope of any waiver, if it is effective.  Again, the plaintiff remains free to raise any such questions on remand.
[5] The panelists are listed in order of seniority.